ATTORNEYS FOR APPELLANTS
Andrew L. Teel
Lindsey C. Swanson
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES
Jane E. Malloy
Ashley A. O'Neil
Malloy Law, LLC
Fort Wayne, Indiana

# In the
# Indiana Supreme Court

FILED
Oct 26 2016, 9:56 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

### No. 02S05-1603-CT-114

F. JOHN ROGERS, AS PERSONAL REPRESENTATIVE
OF PAUL MICHALIK, DECEASED, AND R. DAVID BOYER,
TRUSTEE OF THE BANKRUPTCY ESTATE OF JERRY LEE CHAMBERS,

*Appellants (Plaintiffs below),*

v.

ANGELA MARTIN AND BRIAN PAUL BROTHERS,

*Appellees (Defendants below).*

Appeal from the Allen Superior Court, No. 02D02-1204-CT-191
The Honorable Craig J. Bobay, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A05-1506-CT-520

**October 26, 2016**

**Rush, Chief Justice.**

Angela Martin and Brian Brothers co-hosted a house party. As it wound down, Brothers and two guests—Jerry Chambers and Paul Michalik—got into a fistfight. Afterwards, Martin found Jerry Chambers bleeding from his face and Paul Michalik lying motionless on her basement floor. Michalik died shortly thereafter.

Chambers's bankruptcy trustee and Michalik's estate sued Martin, claiming, in part, that she negligently caused Michalik's injuries and that she furnished alcohol in violation of Indiana's Dram Shop Act. Martin filed a motion for summary judgment, which the trial court granted.

Applying principles of premises liability law, we first hold that summary judgment was improper on the negligence claim. As a landowner, Martin owed her invitee Michalik a duty to exercise reasonable care for his protection while he was on her premises. This Court has, on several occasions, decided how this general landowner–invitee duty applies in various circumstances—with foreseeability being the determinative question. Bearing that in mind, we conclude that although Martin had no duty to protect Michalik from the unforeseeable fistfight, she did have a duty to protect him from the foreseeable exacerbation of an injury occurring in her home. Whether she breached this duty by going back to bed instead of taking some affirmative action, like dialing 911, is a question of fact. We therefore reverse summary judgment on the negligence claim.

Summary judgment was proper, however, on the Dram Shop Act claim. Under Indiana's Dram Shop Act, a person does not "furnish" alcohol by providing it to someone who already possesses it. And here, because Martin and Brothers jointly paid for and possessed the same beer, Martin could not furnish it to Brothers. We thus affirm summary judgment on that claim.

## Facts and Procedural History

During the early morning hours of May 9, 2010, police found Paul Michalik dead on Angela Martin's front lawn.

Around six o'clock the prior evening, people began arriving at Martin's house for a party. Martin owned the home, and her then-boyfriend (now-husband) Brian Brothers had lived there on and off since 2006. Together, Martin and Brothers planned the party and invited friends, family, and co-workers. About fifty people attended, including Jerry Chambers and his significant other, Michalik. Although Martin did not know Chambers, he was a co-worker of Brothers and had been "personally invited" to the party. And while neither Martin nor Brothers had met Michalik, the understanding was that spouses, boyfriends, and girlfriends were "inadvertently invited."

In preparation for the gathering, Brothers ordered a keg of beer, picked it up, and set it up in the garage. Brothers paid for the keg with a debit card he and Martin used for household expenses. Although the card was associated with a bank account solely in Martin's name, Brothers contributed by cashing his paychecks and giving most of his income to Martin to deposit in the account. The two regularly pooled their income to pay bills and other expenditures even though Martin made significantly more money than Brothers.

2

For the most part, party guests served themselves from the keg. But, at one point, a group playing poker in the basement asked Martin to fill an empty pitcher. Martin went upstairs, filled the pitcher from the keg, and brought it back to the basement, where she set it on the poker table. It is "possible" that Brothers was playing poker at the time.

Over the course of the night, Brothers had "[m]aybe a couple shots, three, four beers." Martin did not monitor Brothers's drinking, even though she knew he was on probation for a second Operating While Intoxicated (OWI) conviction.

Around 2:00 a.m., the party was winding down, and about ten guests remained. Martin told Brothers goodnight and headed to bed. According to Martin, Brothers was just "being normal," and it was not obvious to her that he had "a buzz going."

The last guests began to leave about 3:30 a.m., and Brothers went down to the basement to tell Chambers and Michalik it was time to go. A fistfight then ensued between the three of them. Shortly after, Brothers woke up Martin and told her that Chambers and Michalik had attacked him and that he fought back. Brothers asked Martin to help get Chambers and Michalik to leave.

Martin obliged. She got up, walked down to the basement, and saw Michalik lying motionless on the basement floor with his eyes closed. Martin did not see any injuries to Michalik's face but did notice Chambers had blood on his. She asked if Michalik was okay, and Chambers and Brothers checked Michalik's pulse and confirmed he was breathing. Martin was not concerned and did not call the police or dial 911, assuming that Michalik was "just passed out from drinking too much or something." But she did tell Chambers that "if he's concerned, if he thinks there's a chance [Michalik has alcohol poisoning], to take him to the hospital and get him checked out."

Martin went back to her room, and Chambers and Brothers carried Michalik upstairs. When Brothers came to bed, Martin asked him whether Chambers and Michalik had left. Brothers said "no," and Martin told Brothers to make sure he helped Chambers get Michalik in the car. Soon after, police arrived, found Michalik dead outside the home, and arrested Brothers. Ultimately, Brothers's OWI probation was revoked because authorities found alcohol in his system, and he was sentenced to a period of incarceration.

The personal representative of Michalik's estate and Chambers's bankruptcy trustee filed a complaint against Martin and Brothers. They claimed Martin was liable based on two theories—

that Martin negligently caused Michalik's injuries and that Martin caused Michalik's and Chambers's injuries by "furnishing" alcohol to a visibly intoxicated Brothers, who assaulted those victims. Martin filed a motion for summary judgment on both claims, which the trial court granted. The trial court reasoned that Martin was not negligent because Indiana did not recognize a social host's duty to render aid to a social guest and because Martin could not "furnish" beer to Brothers, as the couple exercised joint control over the keg.[1]

On appeal, the Court of Appeals reversed, concluding summary judgment was improper because (1) Martin, as a social host, owed Michalik a duty to render aid and questions of fact remained as to whether she breached that duty and (2) questions of fact existed as to whether Martin "furnished" Brothers with beer from the keg. Rogers v. Martin, 48 N.E.3d 318, 323–25 (Ind. Ct. App. 2015). Martin filed a petition to transfer, which we granted, thereby vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).[2]

## Standard of Review

We review summary judgment using the same standard as the trial court: summary judgment is appropriate only when the designated evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014). And where the challenge to summary judgment raises questions of law, we review them de novo. Ballard v. Lewis, 8 N.E.3d 190, 193 (Ind. 2014).

Here, both challenges raise questions of law. First, we review de novo whether Martin owed Michalik a duty. See Estate of Heck ex rel. Heck v. Stoffer, 786 N.E.2d 265, 268 (Ind. 2003)

---

[1] The trial court also granted Martin's motion to strike parts of a report attached to plaintiffs' response in opposition to Martin's motion for summary judgment. On appeal, plaintiffs argued that the trial court improperly granted the motion to strike, and the Court of Appeals concluded that it "need not decide this issue" because it "resolve[d] the propriety of summary judgment without considering the challenged evidence." Rogers v. Martin, 48 N.E.3d 318, 319 n.1 (Ind. Ct. App. 2015). For the same reason, we find it unnecessary to determine whether the trial court properly granted Martin's motion to strike.

[2] After we held oral argument in this case, plaintiffs filed a "Notice of Contingent Settlement," notifying this Court that "the parties to this matter reached a settlement of their claims at mediation," and that the "settlement is contingent on approval by both the United States Bankruptcy Court and the Allen County Probate Court." Subsequently, once the opinion had been nearly finalized, plaintiffs filed a motion to dismiss because the parties had reached a settlement. Under Indiana Appellate Rule 36(A), "[a]n appeal *may* be dismissed on motion of the appellant upon the terms agreed upon by all the parties on appeal or fixed by the Court." App. R. 36(A) (emphasis added). Given the importance of the legal issues in this case, we deny the motion to dismiss and publish this opinion, while respecting the settlement between the parties.

(reviewing existence of duty de novo). Second, we review de novo whether Martin "furnished" Brothers alcohol within the meaning of Indiana's Dram Shop Act. See Gardiner v. State, 928 N.E.2d 194, 196 (Ind. 2010) (reviewing matter of statutory interpretation de novo).

**Discussion and Decision**

Plaintiffs seek to hold Martin liable under two distinct theories—premises liability and Dram Shop Act liability. Michalik's estate first claims that Indiana should recognize a social host's duty to render aid to a social guest and that Martin breached this duty after finding Michalik lying on her basement floor. But this contention fails to recognize established premises liability principles.

Under Indiana premises liability law, the duty a landowner owes to an invitee is well established: a landowner must exercise reasonable care for the invitee's protection while the invitee is on the premises. Because this general duty has been articulated, the Court need not judicially determine the existence of a separate duty today. Rather, we look to foreseeability as the critical inquiry in deciding whether the landowner–invitee "duty to protect" extends to a particular scenario. Ultimately, as explained below, we determine that Martin was not liable, as a matter of law, for any failure on her part to protect Michalik from an unforeseeable fistfight. However, a question of fact remains on whether Martin's later action (or inaction) after discovering Michalik on her basement floor breached her duty to protect him from the foreseeable exacerbation of an injury occurring in her home.

Plaintiffs then rely on the Indiana Dram Shop Act. They claim that Martin "furnished" alcohol to Brothers, who, in turn, injured Chambers and Michalik. But a plain-meaning analysis of the Dram Shop Act reveals that "furnishing" alcohol requires a transfer of possession. And here, because Brothers and Martin jointly possessed the keg that contained the alcohol in question, Martin could not have transferred possession of, or "furnished," the alcohol to Brothers.

**I. Foreseeability is the Critical Inquiry in Deciding Whether the Well-Established Landowner–Invitee Duty Extends to a Particular Scenario. Here, Questions of Fact on the Reasonableness of Martin's Conduct Preclude Summary Judgment.**

To prevail on a claim of negligence, Michalik's estate must show that (1) Martin owed a duty to Michalik; (2) Martin breached that duty by allowing her conduct to fall below the applicable

5

standard of care; and (3) Martin's breach of duty proximately caused a compensable injury to Michalik. Kroger Co. v. Plonski, 930 N.E.2d 1, 6 (Ind. 2010).

It is well settled that absent a duty, there can be no breach. Peters v. Forster, 804 N.E.2d 736, 738 (Ind. 2004). And whether a duty exists is a question of law for the court to decide. Id. But a judicial determination of the existence of a duty is unnecessary where the element of duty has "already been declared or otherwise articulated." N. Ind. Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003).

Here, Michalik's estate alleged that Martin was negligent because she failed to "render aid" to Michalik after finding him injured on her basement floor. The Court of Appeals determined that a social host's duty to render aid to a social guest had not been recognized in Indiana and, thus, employed the three-part balancing test announced in Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991), to determine whether such a duty existed. Rogers, 48 N.E.3d at 323–25. After considering the three Webb factors—the relationship between the parties, the reasonable foreseeability of harm to the injured person, and public policy concerns—the Court of Appeals determined that Martin owed a duty to render aid to Michalik. Id. at 324. More specifically, the Court of Appeals pronounced that a social host has a duty to render assistance in her home to an injured social guest regardless of the cause of injury. Id. And because questions of fact remained on whether Martin breached that duty, the Court of Appeals held the trial court's grant of summary judgment was inappropriate. Id. at 325.

Although we agree that summary judgment on the negligence claim was improper, we reach that conclusion for a different reason. The duty governing Martin's conduct—the duty to exercise reasonable care for an invitee's protection while the invitee is on the premises—is already firmly grounded in premises liability law. Over the years, the application of this broadly stated landowner–invitee duty to particular situations has depended on one critical element: foreseeability.

But before we employ a foreseeability analysis in this case, we must step back and examine how the landowner–invitee duty has progressed over time. Today we acknowledge that inconsistencies in Indiana case law have generated confusion over this issue, and we provide a workable framework for the future.

6

A. *The landowner–invitee duty applies to dangerous activities on the land as a matter of law if a court finds that the broad type of plaintiff and harm involved were foreseeable to the landowner.*

1. The contours of a landowner's duty of reasonable care have been well defined when conditions of the land are at issue, but less so for claims involving activities on the land.

Twenty-five years ago, this Court decided Indiana's seminal premises liability case: Burrell v. Meads, 569 N.E.2d 637 (Ind. 1991). Burrell addressed "the question of what duty an Indiana landowner or occupier owes to his social guests to protect them from physical harm while they are on his premises." Id. at 638. This Court examined "the evolution and the current condition of premises liability law," id. at 639, focusing heavily on the relationship between the parties and public policy concerns, id. at 640–43. Ultimately, this Court determined that social guests qualify as invitees, so a landowner must exercise reasonable care for their protection. Id. at 643. This Court stated that the Restatement (Second) of Torts section 343 supplied "the best definition" of this landowner–invitee duty, articulated as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Id. at 639–40. On one hand, the Burrell opinion seemed to declare that the landowner–invitee duty was confined only to situations where section 343 would apply. But other portions of the opinion defined the landowner–invitee duty more broadly. At one point, the duty is described as one "of reasonable care for the protection of . . . guests' safety." Id. at 639. And at another, we declared that "a landowner should exercise reasonable care for the safety of [social] guests." Id. at 643. Likewise, Burrell's three companion cases expressed the landowner–invitee duty broadly, albeit with varying language. See LeLoup v. LeLoup, 569 N.E.2d 648, 649 (Ind. 1991) (referring to "the duty an Indiana landowner or occupier owes to his social guests to protect them from physical harm while they are on his premises"); Risk v. Schilling, 569 N.E.2d 646, 647 (Ind. 1991) (stating

that a landowner owes an invitee "a duty of reasonable care for protection of his safety"); Parks v. Parks, 569 N.E.2d 644, 645 (Ind. 1991) (framing the duty as one "of reasonable care for [the] protection of [a social guest's] safety").

Understandably, post-Burrell cases have expressed the landowner–invitee duty in different ways. Some cases have stated the duty in its broad formulation. E.g., Winfrey v. NLMP, Inc., 963 N.E.2d 609, 612 (Ind. Ct. App. 2012) (citing Burrell and stating that "a landowner owes an invitee a duty to exercise reasonable care for the invitee's protection while the invitee is on the landowner's premises"); Rider v. McCamment, 938 N.E.2d 262, 267 (Ind. Ct. App. 2010) ("A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while she is on the premises."). Other cases, citing Burrell, have phrased the landowner–invitee duty in a more limited fashion, arguably restricting it to the parameters set forth in Restatement (Second) of Torts section 343. E.g., Christmas v. Kindred Nursing Ctrs. Ltd. P'ship, 952 N.E.2d 872, 880 (Ind. Ct. App. 2011) ("Our Indiana Supreme Court has adopted Restatement (Second) of Torts Section 343, which defines the scope of the duty a landowner owes to an invitee on its property . . . ."); Duffy v. Ben Dee, Inc., 651 N.E.2d 320, 322 (Ind. Ct. App. 1995) (stating that "[i]n order for premises liability theory to apply . . . each of the three following elements must be present" and then referencing section 343).

These varying expressions of the landowner–invitee duty are not necessarily inconsistent. When a physical injury occurs as a result of a condition on the land, the three elements described in Restatement (Second) of Torts section 343 accurately describe the landowner–invitee duty. And because Burrell involved an injury due to a condition on the land, it accordingly framed the landowner–invitee duty in terms of section 343. But as mentioned above, other portions of Burrell spell out the landowner–invitee duty broadly. This broad formulation recognized that while section 343 limits the scope of the landowner–invitee duty in cases involving injuries due to *conditions of* the land, injuries could also befall invitees due to *activities on* a landowner's premises unrelated to the premises' condition—and that landowners owe their invitees the general duty of reasonable care under those circumstances, too.

2. Where a premises liability claim is based on activities on the land, foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances at issue.

Cases decided before and after Burrell recognize that both harmful conditions and harmful activities on land may implicate a landowner's duty. E.g., Ross v. Lowe, 619 N.E.2d 911, 915 (Ind. 1993) ("The [landowner–invitee] duty extends not only to harm caused by a condition of the land, but also to activities being conducted on the land . . . ."); Martin v. Shea, 463 N.E.2d 1092, 1095 (Ind. 1984) ("[N]o Indiana cases . . . distinguish dangerous activities on the premises from dangerous conditions . . . ."); Harris v. Traini, 759 N.E.2d 215, 223 (Ind. Ct. App. 2001) ("The duty of reasonable care extends not only to harm caused by a condition on the land but also to activities being conducted on the land."). But while the landowner–invitee duty applicable to dangerous conditions on the land has fixed parameters (i.e., the elements of Restatement (Second) of Torts section 343), the contours of the landowner–invitee duty regarding dangerous activities on the premises have not been drawn as clearly.

This lack of well-defined limits has led to inconsistencies in how courts extend the landowner–invitee "duty to protect" to situations that do not involve a condition of the land. For example, in a case decided shortly after Burrell, the Court of Appeals addressed whether a landowner had a duty to protect an invitee from a third party's act on the landowner's premises. Kinsey v. Bray, 596 N.E.2d 938, 940–41 (Ind. Ct. App. 1992), trans. denied. Confining the landowner–invitee duty "to risks arising out of the condition of the actor's land or chattels," Kinsey undertook a full Webb v. Jarvis analysis to determine "whether the law will recognize a duty" in this particular situation. Id. at 940–43 (citing Webb, 575 N.E.2d at 995, 997). After balancing the relationship between the parties, the foreseeability of harm, and public policy concerns, the Kinsey court announced that "[a] possessor of land must exercise reasonable care for the protection of social guests or invitees from acts of third parties which are reasonably foreseeable." Id. at 944.

More recent case law, though, has acknowledged that balancing all of the Webb factors in landowner–invitee cases is not necessary. In Delta Tau Delta v. Johnson, 712 N.E.2d 968, 971 (Ind. 1999), this Court addressed "whether and to what extent landowners owe any duty to protect their invitees from the criminal acts of third parties." In explaining the role Webb played in making this determination, we said,

> Having already determined in Burrell v. Meads, 569 N.E.2d 637
> (Ind. 1991) that [a landowner's duty to exercise reasonable care for
> an invitee's protection] exists, we need not formally use the three
> factor balancing test as enunciated in Webb v. Jarvis, 575 N.E.2d

9

> 992 (Ind. 1991) . . . . The issue in this case is when, if ever, does that duty extend to criminal acts by third parties. Looked at under the <u>Webb</u> framework, our holding in <u>Burrell</u> implicitly determined that two of the three factors, relationship and public policy, weighed in favor of establishing a duty between a social host and his invited guest. The only issue remaining in this case is foreseeability.

<u>Delta Tau Delta</u>, 712 N.E.2d at 971 n.4. In other words, <u>Delta Tau Delta</u> recognized that although landlords owe invitees a well-established "duty to protect," courts must look at one critical element before extending that duty to cases where an invitee's injury occurs not due to a dangerous condition of the land but due to some harmful activity on the premises. That element is foreseeability. <u>Id.</u> at 971.

This Court reaffirmed foreseeability's preeminent role within the landowner–invitee duty determination in <u>Kroger Co. v. Plonski</u>, 930 N.E.2d 1 (Ind. 2010). In <u>Plonski</u>, we acknowledged that when there is a well-settled duty, a court's "inquiry is focused on whether a discreet element of the duty has been satisfied." <u>Id.</u> at 7. That inquiry—reasonably foreseeable harm—is "a question of law . . . determined by the court." <u>Id.</u> (internal citation omitted). In other words, our case law has established that foreseeability becomes the determinative question as to whether a court will extend the landowner–invitee "duty to protect" to a situation that does not involve a condition of the land.[3]

This inquiry simply acknowledges that the landowner–invitee "duty to protect" is not limitless, because some harms are so unforeseeable that a landowner has no duty to protect an invitee against them. In fact, this foreseeability component within the landowner–invitee duty is already explicit within Restatement (Second) of Torts section 343—that section subjects landowners to a duty only if the risk of harm due to a dangerous condition of the land was foreseeable. In other words, including foreseeability as an element of duty in other types of landowner–invitee cases ensures that these particular premises liability cases are analyzed in a consistent fashion—or at least as consistent as the infinite permutations of human behavior permit.

---

[3] As noted in <u>Goodwin v. Yeakle's Sports Bar and Grill, Inc.</u>, No. 27S02-1510-CT-627, ___ N.E.3d ___, slip op. at 4–5 (Ind. Oct. 26, 2016), also handed down today, this Court's decisions in <u>Northern Indiana Public Service Co. v. Sharp</u>, 790 N.E.2d 462 (Ind. 2003), and <u>Paragon Family Restaurant v. Bartolini</u>, 799 N.E.2d 1048 (Ind. 2003), could be read to suggest that a court need not evaluate foreseeability in the context of duty because the landowner–invitee duty was well-settled. However, as <u>Goodwin</u> further notes, "such a reading is much too narrow." Slip op. at 5.

10

And it recognizes that courts must have a gatekeeping function available to them so that landowners do not become "the insurers of their invitees' safety." Delta Tau Delta, 712 N.E.2d at 971.

At this point, we have endeavored to clarify two important legal concepts in the area of premises liability law—that the landowner–invitee "duty to protect" generally applies to dangerous activities on the land and that a court must analyze the foreseeability of harm before extending this duty to a particular situation. But we still must address one additional point before moving on to the specifics of this case—and that is how the foreseeability analysis is actually performed.

3. Unlike the foreseeability element of proximate cause, foreseeability as part of the duty analysis is a general threshold determination about the broad type of plaintiff and harm involved, without regard to the specific facts of the occurrence.

Landowner–invitee cases involving dangerous activities on the premises have been inconsistent in addressing how foreseeability relates to duty. On one hand, Plonski, Delta Tau Delta, and other cases employed a "totality of the circumstances" analysis when evaluating a landowner's duty to protect invitees against a particular dangerous activity, namely, foreseeable criminal attacks. E.g., Plonski, 930 N.E.2d at 7; Delta Tau Delta, 712 N.E.2d at 972–73. This "totality of the circumstances" test considers "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents." Plonski, 930 N.E.2d at 7 (quoting Delta Tau Delta, 712 N.E.2d at 972). But a more recent Court of Appeals case involving the landowner–invitee duty employed an approach that, unlike the "totality of the circumstances" test, was not fact-specific. In Barnard v. Menard, Inc., 25 N.E.3d 750 (Ind. Ct. App. 2015), the Court of Appeals was tasked with determining whether a retail store's duty to protect extended to the attack of a customer by an independently contracted security guard. The Barnard court believed that a consideration of the specific facts of the case was unnecessary because foreseeability with respect to duty required only a "general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." Id. at 755 (quoting Goldsberry v. Grubbs, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), trans. denied).

This divergence is understandable. Because foreseeability is a component of both duty and proximate cause, our courts have grappled with whether foreseeability in one context differs from foreseeability in the other. Compare Goldsberry, 672 N.E.2d at 479 ("By logical deduction, the

11

foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry . . . ."), with State v. Cornelius, 637 N.E.2d 195, 198 (Ind. Ct. App. 1994), trans. denied ("Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause." (quoting Webb, 575 N.E.2d at 997)). Because two wholly different tests have emerged for foreseeability in the context of duty, we must provide clarity for practitioners and courts alike.

Thus, today, we chart a definitive path: When foreseeability is part of the duty analysis, as in landowner–invitee cases, it is evaluated in a different manner than foreseeability in the context of proximate cause. Specifically, in the duty arena, foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm. In other words, this foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence. Goodwin v. Yeakle's Sports Bar and Grill, Inc., No. 27S02-1510-CT-627, ___ N.E.3d ___, slip op. at 8–11 (Ind. Oct. 26, 2016) (evaluating why this is the appropriate framework in determining foreseeability in the duty context). We believe this analysis comports with the idea that "the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Gariup Constr. Co., Inc. v. Foster, 519 N.E.2d 1224, 1227 (Ind. 1988) (quoting Prosser & Keeton on Torts § 53, at 357–59 (5th ed. 1984)). Bearing that framework in mind, we turn to the case at hand.

> B. *In this case, the homeowner had no duty to take precautions to prevent the co-host of the party from fighting a guest; however, the homeowner did have a duty to protect an injured social guest from an exacerbation of an injury occurring on the premises.*

Because Michalik was Martin's social guest, the landowner–invitee "duty to protect" generally applied throughout the party.[4] We must decide today whether this duty extended to two

---

[4] Both parties have assumed Michalik was an invitee throughout the whole party. The trial court found, however, that it was undisputed that "Brothers went down to the basement to tell Chambers and Michalik that it was time to leave." The evidence likewise supports this conclusion. A reasonable inference is that the fight broke out between the three because Michalik and Chambers refused to leave. In that event, Michalik's status would have been transformed from an invitee to a trespasser, and the corresponding duty would have been transformed also. This is because the owner or occupier of a home has the right to

particular situations, as a matter of law. First, we determine whether Martin owed a duty to take reasonable precautions to protect Michalik from harm that occurred during the fistfight with Brothers. Then, we determine whether Martin owed a duty to protect Michalik from an exacerbation of his injuries after finding him unconscious on her basement floor.

We have repeatedly stated that a landowner has a duty to take reasonable precautions to protect invitees from foreseeable criminal attacks. E.g., Plonski, 930 N.E.2d at 7. And in this case, we assume, without deciding, that Brothers's conduct in engaging in a fistfight with Chambers and Michalik constituted a criminal act. As stated above, whether this duty applies to Martin's conduct, as a matter of law, requires us to evaluate the broad type of plaintiff and harm involved, without considering the specific facts of the case. In other words, the inquiry is not whether Martin could have foreseen that Brothers would get into a brawl with Chambers and Michalik. Rather, we look at whether a duty should be imposed on Martin, as a homeowner, to take precautions to prevent a co-host from fighting with and injuring a house-party guest. Although house parties can often set the stage for raucous behavior, we do not believe that hosts of parties routinely physically fight guests whom they have invited. Ultimately, it is not reasonably foreseeable for a homeowner to expect this general harm to befall a house-party guest; rather, to require a homeowner to take precautions to avoid this unpredictable situation would essentially make the homeowner an insurer for all social guests' safety. Accordingly, Martin had no duty to take reasonable precautions to protect Michalik from Brothers's conduct.

Martin did, however, have a duty to protect Michalik after she found him lying unconscious on her basement floor. Homeowners should reasonably expect that a house-party guest who is injured on the premises could suffer from an exacerbation of those injuries. Thus, we conclude

determine the scope of a particular invitation and the circumstances under which the invitation may be revoked. See Olsen v. State, 663 N.E.2d 1194, 1196 (Ind. Ct. App. 1996). And "when an invitee exceeds the scope of invitation, [he] loses [his] status." Rider, 938 N.E.2d at 268. In other words, although a visitor may be an invitee when first entering a home, he may be demoted to a licensee or trespasser under certain circumstances—such as when an invitation is unequivocally revoked. See id. But we hasten to point out that the evidence does not conclusively establish that Brothers actually asked the couple to leave; rather, it establishes that it was Brothers's intention to do so as he descended to the basement. Because we must resolve any doubts about facts, or the inferences therefrom, in the light most favorable to the non-moving party, Smith v. Delta Tau Delta, Inc., 9 N.E.3d 154, 160 (Ind. 2014), we conclude that it is unclear what prompted the fight between Brothers, Chambers, and Michalik. Accordingly, we also regard Michalik as an invitee throughout the whole course of the night for the purposes of summary judgment review.

that Martin owed a duty to her social guest to protect him from the exacerbation of an injury occurring in her home. The undisputed evidence shows that Martin went down to her basement and saw Michalik listless on her floor. Michalik died shortly after. Of course, this does not necessarily mean that Martin was negligent—questions of breach and proximate cause remain for the fact-finder. In other words, we do not decide whether Martin's failure to call the police, dial 911, or take any other affirmative action breached this duty. Nor do we determine whether Michalik's death was a natural and probable cause of Martin's conduct. We do believe, however, that reasonable persons would recognize a duty here and agree to its existence. Gariup Constr. Co., 519 N.E.2d at 1227. And because questions of fact remain on the negligence claim, summary judgment was improper.

## II. Under Indiana's Dram Shop Act, a Person Does Not "Furnish" Alcohol by Providing It to Someone Who Already Possesses It.

As a second basis for holding Martin liable, plaintiffs argue Martin "furnished" alcohol to Brothers in violation of Indiana's Dram Shop Act, codified at Indiana Code section 7.1-5-10-15.5. The Act imposes civil liability for "furnishing" alcohol to visibly intoxicated people who, in turn, cause injury. Outback Steakhouse of Florida, Inc., v. Markley, 856 N.E.2d 65, 74 (Ind. 2006). The parties' dispute boils down to statutory interpretation—the plain meaning of "furnish." Martin argues two people who possess the same alcohol cannot "furnish" it to each other, while plaintiffs argue they can.

The Court of Appeals agreed with plaintiffs, finding a genuine issue of material fact existed as to whether Martin furnished beer to Brothers by placing a pitcher on the poker table. We, however, agree with Martin, and hold that Martin and Brothers jointly possessed the alcohol and thus could not furnish it to each other.

When interpreting a statute, "our primary goal is to ascertain the legislature's intent." Jackson v. State, 50 N.E.3d 767, 772 (Ind. 2016). To discern that intent, we give effect to the plain meaning of the statute's words. Id. When those words are clear and unambiguous, we simply apply their plain meaning, without resorting to other canons of statutory construction. Id.

We thus begin—and end—our analysis with Indiana's modern Dram Shop Act, enacted in 1986, which clearly and unambiguously defines "furnish" in its opening section:

14

(a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

. . . .

I.C. § 7.1-5-10-15.5 (2016). Although the statute defines "furnish" using relatively broad words—such as "sell" and "provide"—those words involve a transfer of possession. To "sell" something, one must transfer possession. To "exchange" or "provide" something, the same holds true. In other words, one cannot "sell" or "provide" property if the recipient already possesses it. Likewise, if two or more people own the *same* property, they cannot sell or provide it to each other: they already *jointly* possess it.

The transfer of possession requirement is not unique to the plain meaning of the 1986 version of the Act. It existed in previous versions as well. For example, Indiana's original Act, passed in 1853, imposed liability only on those who "retail[]" liquor. 1853 Laws of Indiana 88. Likewise, the 1875 version imposed liability only on those who "sell, barter, or give away" liquor, and the 1917 version only on those who "furnish[]" it. 1875 Laws of Indiana Spec. Sess. 59; 1917 Ind. Acts 30. The modern Act did nothing to alter that longstanding transfer requirement. Instead, the Act cemented it—and Indiana courts took notice.

Indeed, several decades of case law have affirmed the modern Act's plain-meaning transfer requirement. See, e.g., Gentry v. Day, 22 N.E.3d 710, 714–15 (Ind. Ct. App. 2014); Rauck v. Hawn, 564 N.E.2d 334, 337 (Ind. Ct. App. 1990); Lather v. Berg, 519 N.E.2d 755, 763 (Ind. Ct. App. 1988). For example, in Lather, two teenage boys, Berg and Murphy, enlisted an adult to buy them whiskey. 519 N.E.2d at 757. The boys shared the bottle and, at the end of the evening, Murphy drove drunk and slammed into a patrol car, killing the officer. Id. at 757–58. The court

held Berg did not "furnish" alcohol to Murphy for two reasons. First, the boys "acquired possession of the liquor simultaneously." Id. at 763. And second, even though Berg poured Murphy's first glass of whiskey, the boys "exercised *joint* control over [the bottle] throughout the evening." Id. at 757, 763. In short, the two boys jointly possessed the alcohol and thus could not "furnish" it to each other. No transfer of possession took place.

A transfer of possession did take place, however, in Rauck, and the Court of Appeals correctly found a genuine issue of material fact as to whether the defendant "furnish[ed]" alcohol. 564 N.E.2d at 339. There, a teenager, Rauck, paid a stranger to buy him a fifth of whiskey. Id. at 337–38. Rauck decided to share that whiskey with a friend who had not contributed any money, and, tragically, the friend later drove into a tree, injuring his passenger. Id. at 336, 338. The Court of Appeals allowed the passenger's claim against Rauck to go to trial, holding Rauck might well have "furnish[ed]" whiskey because he "paid for it himself, and exercised possession and control over it before offering it" to his friend. Id. at 338.

Here, like the boys in Lather and unlike the friends in Rauck, Martin and Brothers *jointly possessed* the same alcohol, and thus could not "furnish" it to each other. The undisputed facts show no transfer of possession. Brothers ordered the keg, picked it up, and paid for it using a bank account containing commingled funds. Brothers and Martin therefore jointly bought the beer and "acquired possession of the [alcohol] simultaneously." 519 N.E.2d at 763. We accordingly hold as a matter of law that Martin did not—and could not—"furnish" to Brothers what he already possessed.

**Conclusion**

We find that summary judgment was improper on the negligence claim as there remains a question of fact as to whether Martin breached the landowner–invitee "duty to protect" owed to Michalik. However, summary judgment was appropriate on plaintiffs' Dram Shop Act claim because the plain meaning of "furnish" within the Act requires that Martin have transferred possession of the alcohol to Brothers, which she could not do, as they jointly possessed the beer in question. Accordingly, we affirm summary judgment in part and reverse in part.

Rucker, David, Massa, and Slaughter, JJ., concur.