ATTORNEYS FOR APPELLANTS

Daviess County, Indiana and Daviess
County Health Department

R. Jeffrey Lowe
Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLANTS

The Daviess-Martin Joint County Parks &
Recreation Department

Matthew L. Hinkle
John V. Maurovich
Coots Henke Wheeler, P.C
Carmel, Indiana

ATTORNEY FOR APPELLEES

Terry A. White
Olsen & White, LLP
Evansville, Indiana



FILED

Jun 19 2017, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Daviess-Martin County Joint
Parks and Recreation
Department, Daviess County
Indiana, and Daviess County
Health Department,

*Appellants-Defendants,*

v.

June 19, 2017

Court of Appeals Case No.
19A04-1607-CT-1563

Appeal from the Dubois County
Circuit Court

The Honorable William E.
Weikert, Special Judge

Trial Court Cause No.
19C01-1409-CT-499

The Estate of Waylon W. Abel,
by
John Abel, Personal
Representative, and
John Abel on Behalf of Waylon
W. Abel's Dependent Children,
Faith Abel, John Abel, and
Gabriel Abel,

*Appellees-Plaintiffs.*

Martin County Indiana, Martin
County
Health Department and The State of
Indiana,

*Rule 17(A) Third-Parties-Defendants.*

**Barnes, Judge.**

# Case Summary

[1] In this interlocutory appeal, the Daviess-Martin Joint County Parks & Recreation Department ("Parks Board"), Daviess County, Indiana ("the County"), and the Daviess County Health Department ("Health Department") (collectively, the "Appellants") appeal the trial court's denial of their motions for summary judgment regarding a negligence claim by the Estate of Waylon Abel by John Abel, Personal Representative, and John Abel on behalf of the dependent children of Waylon Abel (collectively, "the Estate"). We reverse and remand.

## Issue

Appellants raise several issues, and we find one dispositive: whether the Appellants owed a duty to Abel.[1]

## Facts

*Naegleria fowleri* is an amoeba, a microscopic free-living organism, that is found naturally in soil and freshwater. The amoeba can survive on its own and is not directly dependent on another organism for its survival. The amoeba thrives in warm freshwater bodies and is more commonly found in the southern parts of the United States. There is only one known way for the amoeba to infect a human. Water containing the amoeba must forcefully enter the nasal passage and reach the olfactory nerve, which is located at the very top of the nasal canal, just beneath the brain. The amoeba then can cause primary amoebic meningoencephalitis ("PAM"), a brain infection that leads to the destruction of brain tissue. The fatality rate is over 97%. However, the risk of a *Naegleria fowleri* infection is extremely rare. Between 1962 and 2013, only 132 people in the United States were diagnosed with PAM "despite millions of recreational water exposures each year." Appellants' App. Vol. II p. 96.

West Boggs Park ("the Park") is a 1,500-acre recreation area that includes a 622-acre lake. The Park is jointly owned by Daviess County and Martin

---

[1] Appellants also argue that they were entitled to immunity. We need not address that argument because we find that they did not owe Abel a duty.

County, and the property is governed by and through the Parks Board. The creation and operation of the Parks Board is authorized and governed by Indiana Code Section 36-10-3-20 through Indiana Code Section 36-10-3-32. The Parks Board oversees operation of the Park. Although the County commissioners receive minutes of Parks Board meetings, the Park is operated "independent of unilateral control" by the County. *Id.* at 83.

[5] On July 15, 2012, Abel was a visitor to the Park. According to the Estate, Abel was exposed to *Naegleria fowleri* while swimming in the lake, and he contracted PAM, resulting in his death. Abel was the first person in Indiana's recorded history to contract PAM.

[6] In June 2014, the Estate filed a complaint against the Parks Board, the County, the Health Department, Martin County, Indiana, the Martin County Health Department, and the State of Indiana. The Estate alleged that the defendants were negligent for:

> failing to protect the public from injury, including the Plaintiff, by failing to test the water of West Boggs Lake to determine the existence of harmful organisms in the water, including but not limited to *Naegleria fowlari*, to properly maintain West Boggs Lake in a manner permitting safe swimming, and failing to warn the public of a dangerous condition at West Boggs Lake, including failing to warn the public of the existence of *Naegleria fowlari* in the water.

*Id.* at 25.

[7]     In January 2015, the County and the Health Department filed a motion for judgment on the pleadings.[2] They argued that they were under no duty to protect Abel and that they were immune from suit under both common law sovereign immunity and statutory immunity. The Parks Board also filed a motion for judgment on the pleadings and argued that it did not have a duty to Abel. Both motions included designations of evidence and a motion to take judicial notice of documents from the Centers for Disease Control and Prevention ("CDC"). Martin County and the Martin County Health Department joined in the motions for judgment on the pleadings.

[8]     The designated evidence noted that there is no routine or rapid test for the presence of *Naegleria fowleri*. Additionally, "no method currently exists that accurately and reproducibly measures the numbers of amebae in the water. This makes it unclear how a standard might be set to protect human health and how public health officials would measure and enforce such a standard." *Id.* at 98. "In general, CDC does not recommend testing untreated rivers and lakes for *Naegleria fowleri* because the amebae is naturally occurring and there is no established relationship between detection or concentration of *Naegleria fowleri* and risk of infection." *Id.* at 106. "There are no means yet known that would control natural *Naegleria fowleri* levels in lakes and rivers." *Id.* at 104. According to the CDC, "recreational water users should assume that there is a

---

[2] The State of Indiana also filed a motion to dismiss, which the trial court later denied.

low level risk when entering all warm freshwater, particularly in southern-tier states." *Id.* at 96. The CDC documentation notes:

> Posting signs based on finding *Naegleria fowleri* in the water is unlikely to be an effective way to prevent infections. This is because:
>
> - *Naegleria fowleri* occurrence is common, infections are rare.
>
> - The relationship between finding *Naegleria fowleri* in the water and the occurrence of infections is unclear.
>
> - The location and number of amebae in the water can vary over time within the same lake or river.
>
> - There are no rapid, standardized testing methods to detect and quantitate *Naegleria fowleri* in water.
>
> - Posting signs might create a misconception that bodies of water without signs or non-posted areas within a posted water body are *Naegleria fowleri*-free.

*Id.* at 96-97.

[9] In response, the Estate argued that the CDC recommends warning the public "that whenever they enter a warm freshwater body" they should assume an amoeba is present. Appellants' App. Vol. III p. 18. According to the Estate, a "material fact about what the CDC recommends regarding warning about the presence and risks of *Naegleria fowleri* remains in dispute . . . ." *Id.* at 20. The Estate argued that further discovery was necessary to determine the defendants'

actual knowledge about *Naegleria fowleri* and that they should have known *Naegleria fowleri* was present in the lake. The Estate contended that the defendants owed a duty to Abel as an invitee and under common law and statutory theories.

[10] Because the motions included matters outside of the pleadings, the trial court converted the motions to motions for summary judgment. The trial court gave the Estate thirty days to file responses to the converted motions. The Estate incorporated their prior response as their response to the summary judgment motions. The defendants then filed replies arguing, in part, that the Estate had failed to designate any evidence or raise a genuine issue of material fact.

[11] The trial court denied the motions for summary judgment and certified the order for interlocutory appeal at the request of the Appellants. We accepted jurisdiction of the interlocutory appeal pursuant to Indiana Appellate Rule 14. The State of Indiana, Martin County, and the Martin County Health Department are not participating in this appeal.

## Analysis

[12] The issue is whether the trial court properly denied Appellants' motions for summary judgment based on whether they owed a duty to Abel. When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62

N.E.3d 384, 386 (Ind. 2016). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Id.*

[13] To prevail on a negligence claim, a plaintiff must prove that the defendant or defendants: (1) owed him a duty, (2) breached that duty, and (3) proximately caused his injury. *Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017). "Absent a duty there can be no negligence or liability based upon the breach." *Goodwin*, 62 N.E.3d at 386. "Whether a duty exists is a question of law for the court to decide." *Id.* at 386-87. "[A] judicial determination of the existence of a duty is unnecessary where the element of duty has 'already been declared or otherwise articulated.'" *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016) (quoting *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003)). In general, "[i]n determining whether a duty exists when it has not been established by law, we use a three-part balancing test under which we consider: (1) the relationship between the parties, (2) the reasonable foreseeability of

harm, and (3) public policy concerns." *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1117 (Ind. Ct. App. 2017) (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991), *disapproved in other circumstances by Goodwin*, 62 N.E.3d at 391 (holding the *Webb v. Jarvis* three-part test for determining the existence of a duty is inappropriate in landowner-invitee cases).

[14] In general, our courts have held that "a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well." *Benton v. City of Oakland City*, 721 N.E.2d 224, 230 (Ind. 1999). "Governmental units have a long-recognized duty to maintain a public recreational facility in a reasonably safe manner." *Id.* at 233. However, our supreme court recently handed down two cases regarding the duty of landowners that have an impact on the analysis in this case.

[15] In *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016), a homeowner's boyfriend got into a fight with a guest at their house party, and the guest was injured. The homeowner did not help the guest, and he died after he was carried outside. A complaint was filed alleging that the homeowner was liable based on negligence and a Dram Shop Act claim. The trial court granted the homeowner's motion for summary judgment, and on appeal, our supreme court reversed summary judgment on the negligence claim but affirmed summary judgment on the Dram Shop Act claim.

[16] In analyzing the negligence claim, our supreme court examined and reevaluated the landowner-invitee duty. The duty governing the homeowner's conduct—the duty to exercise reasonable care for an invitee's protection while the invitee is on the premises—was already firmly grounded in premises liability law. *Rogers*, 63 N.E.3d at 321. Over the years, the application of this broadly stated landowner-invitee duty to particular situations has depended on one critical element—foreseeability. *Id.*

[17] The court noted that cases over the last twenty-five years since *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), had expressed the landowner-invitee duty in different ways—some broadly and some in a "more limited fashion." *Id.* at 322. The court determined that:

> When a physical injury occurs as a result of a condition on the land, the three elements described in Restatement (Second) of Torts section 343 accurately describe the landowner-invitee duty. And because *Burrell* involved an injury due to a condition on the land, it accordingly framed the landowner-invitee duty in terms of section 343. But as mentioned above, other portions of *Burrell* spell out the landowner-invitee duty broadly. This broad formulation recognized that while section 343 limits the scope of the landowner-invitee duty in cases involving injuries due to conditions of the land, injuries could also befall invitees due to activities on a landowner's premises unrelated to the premises' condition—and that landowners owe their invitees the general duty of reasonable care under those circumstances, too.

*Id.* at 322-23.

[18]     The court, however, clarified the duty of a landowner to an invitee in the context of a dangerous activity on the land. The court noted that the "critical element" in deciding whether a duty exists in cases "where an invitee's injury occurs not due to a dangerous condition of the land but due to some harmful activity on the premises . . . is foreseeability." *Id.* at 324. The court held that "the landowner-invitee 'duty to protect' generally applies to dangerous activities on the land and that a court must analyze the foreseeability of harm before extending this duty to a particular situation." *Id.* "This inquiry simply acknowledges that the landowner-invitee 'duty to protect' is not limitless, because some harms are so unforeseeable that a landowner has no duty to protect an invitee against them." *Id.* Confusion over how to incorporate the foreseeability into the duty analysis existed, though, because foreseeability is "a component of both duty and proximate cause." *Id.* at 325. In an effort to provide "clarity for practitioners and courts alike," our supreme court held:

> When foreseeability is part of the duty analysis, as in landowner-invitee cases, it is evaluated in a different manner than foreseeability in the context of proximate cause. Specifically, in the duty arena, foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm. In other words, this foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, No. 27S02-1510-CT-627, 62 N.E.3d 384, 388-89, 2016 WL 6573824 (Ind. Oct. 26, 2016) (evaluating why this is the appropriate framework in determining foreseeability in the duty context). We believe this analysis comports with the idea that

"the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Gariup Constr. Co., Inc. v. Foster*, 519 N.E.2d 1224, 1227 (Ind. 1988) (quoting *Prosser & Keeton on Torts* § 53, at 357-59 (5th ed. 1984)).

*Id.*

[19] Applied to the facts of the case, the court noted that it had "repeatedly stated that a landowner has a duty to take reasonable precautions to protect invitees from foreseeable criminal attacks." *Id.* at 326. The court looked at whether a duty should be imposed on the homeowner to take precautions to prevent a co-host from fighting with and injuring a guest at the party. The court determined that it was "not reasonably foreseeable for a homeowner to expect this general harm to befall a house-party guest" and that the homeowner was not "an insurer for all social guests' safety." *Id.* Consequently, the homeowner had no duty to take reasonable precautions to protect the victim from her boyfriend's conduct. The homeowner did, however, have a duty to her social guest to protect him from exacerbation of an injury occurring in her home, and although reasonable persons would recognize such a duty, questions of breach and proximate cause remained for the fact-finder. *Id.* at 327.

[20] On the same day that *Rogers* was handed down, our supreme court also handed down *Goodwin v. Yeakle's Sports Bar and Grill*, 62 N.E.3d 384 (Ind. 2016). In *Goodwin*, customers of a bar were shot by another patron, and the three victims filed a negligence complaint against the bar. The trial court found that the criminal acts were unforeseeable and that the bar did not have a duty to

anticipate and take steps to prevent the shooter's conduct. On appeal, our supreme court further explained duty in the context of whether a landowner owes an invitee a duty to take reasonable care to protect an invitee from third-party criminal attacks. Our supreme court held:

> [B]ecause foreseeability is—in this particular negligence action—a component of duty, and because whether a duty exists is a question of law for the court to decide, the court must of necessity determine whether the criminal act at issue here was foreseeable. This is not a "redetermination" of the duty a landowner owes its invitees. Rather, the focus is on the point and manner in which we evaluate whether foreseeability does or does not exist. *See* [*Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1053 (Ind. 2016)]. And that point initially rests with the trial court as gatekeeper.

*Goodwin*, 62 N.E.3d at 389. The court then held that, "for purposes of determining whether an act is foreseeable in the context of duty we assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Id.* at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). Applying these principles to the facts at issue, our supreme court held:

> The broad type of plaintiff here is a patron of a bar and the harm is the probability or likelihood of a criminal attack, namely: a shooting inside a bar. But even engaging in a "lesser inquiry" we conclude that although bars can often set the stage for rowdy behavior, we do not believe that bar owners routinely contemplate that one bar patron might suddenly shoot another. To be sure, we doubt there exists a neighborhood anywhere in this State which is entirely crime-free. Thus, in the broadest

sense, all crimes anywhere are "foreseeable." But to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state. *See* [*Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 971 (Ind. 1999)]. Further such a blanket duty would abandon the notion of liability based on negligence and enter the realm of strict liability in tort which "assumes no negligence of the actor, but chooses to impose liability anyway." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003). We decline to impose such liability here. In sum we hold that a shooting inside a neighborhood bar is not foreseeable as a matter of law.

*Id.* at 393-94 (footnote omitted). Consequently, the court held that the trial court properly granted summary judgment in the bar's favor.

[21] With our supreme court's opinions in *Rogers* and *Goodwin* in mind, we will analyze whether the County, Parks Board, or the Health Department owed a duty to Abel.

## *I. Daviess County & Parks Board*

[22] Daviess County is a landowner of West Boggs Park, and the Parks Board is the operator of the Park. We will analyze the duty of the County and the Parks Board together because, under the Restatement (Second) of Torts § 328E (1965), a "possessor of land" is "a person who is in occupation of the land with intent to control it . . . ." The Parks Board is the operator of West Boggs Park pursuant to Indiana Code Section 36-10-3-29, which authorized the establishment of a joint department of parks and recreation.

[23] Under the *Rogers/Goodwin* analysis, it is unclear whether the infection by the amoeba would be considered a "condition of the land" or the result of an activity on the land or a third party's conduct. Exposure to the amoeba, which is effectively a wild animal, does not seem to fit squarely into either category. Regardless, under either analysis, we conclude that neither the County nor the Parks Board owed a duty to Abel.

[24] If we engage in the standard analysis regarding a landowner's duty to an invitee for a condition of the land, we apply the Restatement (Second) of Torts section 343, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Rogers*, 63 N.E.3d at 322.

[25] We first focus on whether the County and Parks Board knew or by the exercise of reasonable care would have discovered the condition and should have realized that it involved an unreasonable risk of harm to invitees. The Estate

admits that "there are currently no known methods of eradicating or controlling the Amoeba in" lakes. Appellees' Br. p. 8. However, the Estate argues that, given the published CDC materials regarding *Naegleria fowleri*, the County and Parks Board should have warned swimmers of the possible risks associated with *Naegleria fowleri*. According to the Estate, the County and the Parks Board knew or should have known by the exercise of reasonable care that *Naegleria fowleri* was present in the lake, and they should have "follow[ed] the CDC recommendation that recreational users of warm water bodies of water across the U.S. should be warned about the de facto presence of the Amoeba in the water, its risks, and precautions necessary to protect themselves against infection." Appellees' Br. p. 21.

[26] The County designated evidence that the potential presence of *Naegleria fowleri* was never brought to the attention of the County's Board of Commissioners or "otherwise contemplated during Board meetings" prior to Abel's death. Appellants' App. Vol. II p. 85. Prior to August 7, 2012, the Parks Board Superintendent had never heard of *Naegleria fowleri*. The County did not conduct any water testing at the lake; rather, the Parks Board, which operated the Park for the County, did so. The Parks Board oversees the lake operations "including compliance with the applicable health and environmental regulations governed by Federal, State, and local officials." *Id.* at 218. It routinely tests the water as required by the Indiana State Department of Health, but those requirements do not include testing for *Naegleria fowleri*. There had never been a known *Naegleria fowleri* infection in Indiana prior to Abel's death.

[27] Information from the CDC, which was designated by the defendants, established that there is no routine or rapid test for the presence of *Naegleria fowleri*. Additionally, "no method currently exists that accurately and reproducibly measures the numbers of amebae in the water. This makes it unclear how a standard might be set to protect human health and how public health officials would measure and enforce such a standard." *Id.* at 98. "In general, CDC does not recommend testing untreated rivers and lakes for *Naegleria fowleri* because the ameba is naturally occurring and there is no established relationship between detection or concentration of *Naegleria fowleri* and risk of infection." *Id.* at 106. According to the CDC, "recreational water users should assume that there is a low level risk when entering all warm freshwater, particularly in southern-tier states." *Id.* at 96. "There are no means yet known that would control natural *Naegleria fowleri* levels in lakes and rivers." *Id.* at 104.

[28] There is no designated evidence indicating that either the County or the Parks Board knew of *Naegleria fowleri*. The designated evidence also indicates that a PAM infection, especially in Indiana, is very rare. In fact, Abel was the first known PAM infection in Indiana's history. There is no rapid, standardized testing method to detect and quantitate *Naegleria fowleri*. Even if the County or the Parks Board had tested for *Naegleria fowleri,* there is no quantifiable relationship between finding *Naegleria fowleri* in the water and predicting the occurrence of the PAM infection. Under these circumstances, there is no designated evidence that the County or the Parks Board knew or by the exercise

of reasonable care would have discovered the existence of the *Naegleria fowleri* or realized that it involved an unreasonable risk of harm to invitees, and the County and Parks Board did not owe Abel a duty under this analysis.

[29] If we engage in the analysis set out in *Rogers* and *Goodwin*, we likewise conclude that the County and Parks Board were entitled to summary judgment because no duty to Abel existed. The focus in the *Rogers* and *Goodwin* analysis was foreseeability. We must look at the "broad type of plaintiff" and the "broad type of harm," and we will find a duty where "reasonable persons would recognize it and agree that it exists." *Rogers*, 63 N.E.3d at 325. Thus, we must determine whether it was reasonably foreseeable for a lake owner/operator to expect a swimmer to contract a PAM infection. Prior to Abel's death, there had been no known Indiana PAM infections. Out of millions of recreational swimming water exposures each year, only 132 people were diagnosed with the infection between 1962 and 2013. Even if a swimmer is exposed to *Naegleria fowleri*, the likelihood of contracting the PAM infection is rare. The majority of those infections were found in southern states. Under these circumstances, it was not reasonably foreseeable that Abel would contract a PAM infection, and the County and the Parks Board did not owe a duty to Abel. The trial court erred when it denied the County's and the Parks Board's motions for summary judgment.

## II. Health Department

[30] The Estate also included the Health Department in its complaint, and the trial court denied the Health Department's motion for summary judgment. Where a

duty has not been established by law, "we use a three-part balancing test under which we consider: (1) the relationship between the parties, (2) the reasonable foreseeability of harm, and (3) public policy concerns." *Neal*, 68 N.E.3d at 1117 (citing *Webb*, 575 N.E.2d at 995, *disapproved in other circumstances by Goodwin*, 62 N.E.3d at 391).

[31] The purpose of a local health department is discussed in Indiana Code Section 16-20-1-21, which provides:

> Each local health board has the responsibility and authority to take any action authorized by statute or rule of the state department to control communicable diseases. The board of each local health department or a designated representative may make sanitary and health inspections to carry out this chapter and IC 16-20-8 [dealing with food inspections].

In the designated evidence, the Environmental Health Specialist for Daviess County noted that the Health Department's primary purposes "are to ensure the safe preparation of food for county residents and the sanitary installation and operation of septic systems." Appellants' App. Vol. II p. 78. The Health Department did not conduct any water testing at the lake; rather, the Parks Board did so. The Environmental Health Specialist noted that, "[a]t no time during [his] education, training, certification, or continuing education had [he] heard *naegleria fowleri* mentioned, discussed, cautioned against or otherwise stated." *Id.*

[32] The Health Department argues that there was no special relationship between the Health Department and Abel; the only relationship was one of citizen and

public agency that promotes public welfare. As discussed in the context of the County and Parks Board, the foreseeability harm element also disfavors a finding of duty here. As for public policy, given that the PAM infection is extremely rare, the infection is due to an amoeba that is comparable to a wild animal, there is no rapid, standardized testing method for the presence of *Naegleria fowleri*, and there is no known treatment available for lake water, we do not believe that a blanket imposition of "duty" under these circumstances promotes public policy. We conclude that, like the County and Parks Board, the Health Department did not have a duty here.

## Conclusion

[33] Although the circumstances here were tragic, we conclude that the County, Parks Board, and Health Department did not have a duty to Abel. Consequently, the trial court erred when it denied their motions for summary judgment. We reverse and remand with instructions to enter summary judgment in favor of the County, the Parks Board, and the Health Department.

[34] Reversed and remanded.

Kirsch, J., concurs.

Robb, J., concurs in result with opinion.

| | |
|---|---|
| Daviess-Martin County Joint Parks and Recreation Department, Daviess County Indiana, and Daviess County Health Department, | Court of Appeals Case No. 19A04-1607-CT-1563 |
| *Appellants-Defendants,* | |
| v. | |
| The Estate of Waylon W. Abel, by John Abel, Personal Representative, and John Abel on Behalf of Waylon W. Abel's Dependent Children, Faith Abel, John Abel, and Gabriel Abel, | |
| *Appellees-Plaintiffs.* | |
| Martin County Indiana, Martin County Health Department and The State of Indiana, | |
| *Rule 17(A) Third-Parties-Defendants.* | |

**Robb, Judge, concurring in result.**

[35] I respectfully concur in result. Although I agree the trial court's decision should be reversed, I cannot agree that it should be reversed on the basis the Appellants owe no duty to Abel. As the majority notes, as owners/operators of the Park,

the Appellants have a duty to recreational users of their freshwater lake to maintain it in "reasonably safe manner." Slip op. at ¶ 14 (quoting *Benton v. City of Oakland City*, 721 N.E.2d 224, 230 (Ind. 1999)). I am unwilling to say the Appellants have no duty as a matter of law to test for, warn against, or treat *Naegleria fowleri* because even though no one using the Park had contracted PAM prior to Abel, the de facto presence of the amoeba in freshwater lakes and the devastating consequences of infection were known generally. My objection to deciding this case based on "duty" is that declaring as a matter of law the Appellants had no duty here means that even though the presence of the amoeba is now specifically known within the Park and the serious consequences of infection are clear, the Appellants would be absolved of any responsibility with respect to foreseeable harm the presence of the amoeba might cause going forward. *Cf. N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (noting the three-part balancing test articulated in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), for determining whether a duty exists "is a useful tool in determining whether a duty exists . . . only in those instances where the element of duty has not already been declared or otherwise articulated"). Even though there had been no known cases of PAM in Indiana prior to this and even though an extremely small number of cases have occurred nationally, the common existence of the amoeba in warm freshwater lakes has been known for at least five decades. I would say owners and operators of freshwater recreational areas do have a duty to know about the amoeba; the harm it can cause; and the options for and efficacy of testing, treatment, and warnings to users. That the Appellants' did not test for, treat, or warn of the possible

presence of the amoeba was not because they made a conscious choice based on available research and recommendations, but because they were simply unaware. Although the organism had not previously been identified in this body of water, I believe the ubiquitous nature of this amoeba should have put the Appellants on notice that it was most likely present in their lake and satisfies the foreseeability element of duty.

[36] Having said that, I do not believe the Appellants *breached* their duty. *See Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (stating the plaintiff is required to prove a duty owed by the defendant, a breach of that duty, and injury proximately caused by the breach to prevail on a claim of negligence). Although they should have foreseen the amoeba could be present in the lake, based on the peculiarities of this organism, the rate of infection compared to the rate of exposure, and the fact that no one had previously contracted PAM in Indiana let alone in the Park, I would hold the Appellants could not have anticipated that harm would come to Abel from using the lake on this occasion. I therefore concur in reversing the trial court's denial of the Appellants' motions for summary judgment.