

ATTORNEY FOR APPELLANT

Douglas A. Mulvaney
Stutsman & Mulvaney
Elkhart, Indiana

ATTORNEYS FOR APPELLEE
PRAXAIR, INC.

Angela Kelver Hall
Matthew R. Kinsman
Faegre Baker Daniels LLP
South Bend, Indiana

Brian J. Paul
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
ANTIBUS SCALES & SYSTEMS, INC.

Andrew T. Glier
State Auto Insurance House Counsel
Carmel, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marvin Podemski, <br> *Appellant-Plaintiff*, <br><br> v. <br><br> Praxair, Inc. and Antibus Scales & Systems, Inc., <br> *Appellees-Defendants*. | November 17, 2017 <br><br> Court of Appeals Case No. 71A03-1608-CT-1927 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jenny Pitts Manier, Judge <br><br> Trial Court Cause No. 71D05-1302-CT-21 |

**Brown, Judge.**

[1] Marvin Podemski appeals the trial court's entry of summary judgment in favor of Praxair, Inc. ("Praxair") and Antibus Scales & Systems, Inc. ("Antibus") and the denial of his motion to correct error. Podemski raises two issues which we revise and restate as whether the court erred in entering summary judgment in favor of Praxair and Antibus (together, the "Defendants") and abused its discretion in denying his motion to correct error. We affirm.

## Facts and Procedural History

[2] At approximately 9:00 or 9:15 p.m. on August 17, 2011, Podemski was working as a truck driver for his employer, the Linde Group, hauling industrial gases when he pulled into the Praxair facility in East Chicago. After he pulled the day cab and trailer up on the scales and parked it, Podemski unhooked the air supply line from the truck to the trailer, turned around, grabbed the white air line from a post, hooked it up, and started to walk in the dark toward the back of the trailer. His foot caught a portion of a black supply line running from the post and downward into a grate, and he fell.

[3] On February 1, 2013, Podemski filed a complaint against Praxair alleging in part that it had a duty to maintain its premises in a reasonably safe condition for its invitees, that it failed to do so, that it was negligent in the maintenance of its property in that it failed to maintain the area where deliveries of gas were made by ensuring the area was well lit and any potential dangers were corrected or warned of, and that it was otherwise negligent. After Praxair removed the case to federal court on the basis of diversity jurisdiction, Podemski filed an amended complaint adding Antibus, a company that services the scales at

Praxair's facility, as a party defendant, and the case was remanded to state court. The amended complaint alleged in part that Antibus had a duty to perform its work in a safe and workmanlike manner, to warn of any dangers it created, and to maintain the work area in a safe condition.

[4] Praxair filed a motion for summary judgment on October 31, 2014, and Antibus filed its own motion for summary judgment on May 11, 2015. The court granted both the stipulated extension of time of the parties, filed on November 26, 2014, allowing Podemski until March 2, 2015 to respond to Praxair's motion, and the follow-up request, filed on March 4, 2015, continuing the response deadline until a new schedule for discovery was set. At a status hearing held on February 24, 2016, the trial court set a hearing on both motions for March 29, 2016. On March 4, 2016, Podemski filed a designation of facts and brief in response to Defendants' motions for summary judgment, as well as a motion to publish the depositions of certain individuals.

[5] In his deposition, as designated by Praxair, Podemski testified that he started working for the Linde Group as a truck driver on February 17, 1987, was continuously employed as a truck driver through the time of the accident, and that ninety-five percent of the time he was getting his loads out of the Praxair facility and was there roughly every day. When asked about the air line, Podemski testified that the air supply hoses for the brakes come off the back of the cab of the trunk and hook to the front driver's side corner of the trailer, that when he parked on the scale, "you take the supply line off, put it on the deck plate of the truck, just lay it there. You get the supply line from the post next to

the truck and hook it up." Praxair Appendix Volume 2 at 17. When asked about where he was in the Praxair yard when the fall happened, he answered he was on the scales and had just pulled and parked the day cab and trailer on the scales and that it was dark. When asked how he came to fall, he responded that he had unhooked the "air supply line from the truck to the trailer, turned around, grabbed the air line from the post and hooked it up and started around the post again." *Id.* at 19. He stated that, in his estimation, the setup of the air supply line that came out of the grate was not typical, that he did not recall ever seeing it look like that before, and that "there's three scales there. And I'm not saying I pulled on this scale every time. But, you know, . . . they've had work done on the scales over the five-plus years." *Id.* at 24.

[6] Podemski also testified that the closest light from where he fell was "45, 50 feet" at the "back side of . . . the loading dock," there were lights on the front side of the loading dock, and that, prior to the accident, he never felt he needed more light when he was performing his duties at Praxair. *Id.* at 25-27. When asked if he felt "like if you had more light that night you would have seen the line that you tripped over," he answered affirmatively; when asked if he thought that "the lights that were 35 feet away would've helped you be able to see the grate and the air supply line issue," he answered affirmatively; and, after confirming that he had a flashlight in the truck, Podemski stated he used it on his "pre-trip and post-trip, you know, to look around. Other than that, for unhooking and hooking up, no." *Id.* at 28. When asked how often he was able to see well enough to do the things he needed, Podemski testified that "[i]t's

gonna sound stupid, and you're probably not gonna understand. But you can close your eyes and do it." *Id.* at 27. He also testified that he has "hooked and unhooked trailers for 40-plus years. It's just – (Indicating.)." *Id.*

[7] Antibus designated an affidavit stating that it did not perform any work on the grate, the air hose, or the post between May of 2011 and the date of Podemski's fall on August 17, 2011. Antibus designated a deposition stating that during its normal inspections at Praxair, the employees of Antibus would not go below the scales to make adjustments, but rather could do so "at the top of the scale." Corrected Antibus Appendix Volume 2 at 50.

[8] In his brief opposing Defendants' motions for summary judgment, Podemski cited several depositions and stated that there

> were two separate hoses used to fill the tank. There was the hose for the hydrogen itself and then an air line which was used to keep pressure in the tank . . . . Several Praxair employees testified that the air supply line should have come up through the grating next to a metal post and zip tied with plastic ties to the post. . . . The practice was to zip tie the hose to the post. . . . The air hose should have . . . come up at the base of the post and been fastened to the post.

*Id.* at 83-85.

[9] On March 28, 2016, Podemski filed an additional motion to supplement the record with Mitchell Mullins's deposition, stating that it was "newly discovered evidence which was not available at the time [Podemski] filed his response to [Defendants'] motions for summary judgment." Second Corrected Appellant's

Appendix Volume 3 at 2. The following day, the court held its scheduled hearing on the summary judgment motions. At the beginning of the hearing, the court stated "I've read the motions, I've read the responses, read the Replies. . . . I've not combed through the designated evidence yet. I'm interested to hear your arguments." Transcript at 28. Counsel for Podemski tendered the motion to supplement, and Praxair's counsel stated Mullins was a "wayward" witness who "came out of nowhere," a "former co-worker of Mr. Podemski who [Praxair] deposed when we first learned about his intent to testify that he had also, the night before the Podemski fall, had stubbed his toe on this hose and that he had reported it to someone at Praxair," and that his testimony was "frankly just unbelievable," given "the trip records from Linde, his employer, show that he was not at the Praxair facility the night before the fall, as he says he was." Transcript at 37-38. The court responded that there is "no motion to publish. You just file them with the Court and they're available for use. . . . We've done that with a bunch of them already," and,

> I have granted multiple extensions of time to respond to the various motions for summary judgment. So it's a little distressing to get these Designation of Facts the day before . . . the hearing, . . . I mean, as it is we're right up on the trial because I've kept continuing the Response date. I don't have a whole lot of time . . . . between now and the trial, but I will . . . let you argue about why this should be filed as part of your address.

Id. at 39. Counsel for Podemski stated:

> We were just able to get his deposition scheduled and taken on March 16. We did not get a copy of the transcript until

yesterday. So that is why we unfortunately had to file the . . .
Motion to Supplement so close to the hearing date today,
because there was a delay in getting the deposition transcribed,
and we apologize for that. But we took his deposition as soon as
he was identified and supplied a copy of the transcript as soon as
we had it.

*Id.* at 42. When the court asked whether Podemski's counsel disagreed that
"there's a report showing [Mullins] was not at the facility? Or presumably
showing he was somewhere else," Podemski's counsel stated that he did not
recall seeing any trip report, and Praxair's counsel stated, "we just got them.
[Podemski does not] have them." *Id.* at 43.

[10] On March 31, 2016, the court entered an order granting summary judgment in
favor of Praxair and Antibus. In part, the order states:

Nowhere in [Podemski's] Response or any of his earlier Motions
for (or Stipulations to the) Extension of Time did [Podemski]
alert the Court that there were additional witnesses sought, or
whose depositions were yet to be taken. Further, once the affiant
was identified or his deposition scheduled, [Podemski] did not
seek relief under Rule 56(e) of the Indiana Rules of Trial
Procedure. . . . [Podemski's] Motion to File Supplemental
Designation is denied.

Second Corrected Appellant's Appendix Volume 2 at 17. The order also found
Praxair owed the duty to Podemski that it did to a business invitee, that the
configuration of the air hose, although a danger, was not an unreasonable
danger, and,

it was open and obvious to observation that the air hose was not affixed to the pole and that some greater degree of care should be taken to avoid catching one's foot.

[Podemski] was very familiar with Praxair's facility and had used the equipment many times. He was using the equipment that he believes caused him to trip immediately prior to the fall. Praxair could not reasonably anticipate that he would not take notice of the equipment he was using or that he would fail to look where he was walking, in an area covered by floor grates and furnished with supply hoses.

Although [Podemski] has designated evidence that the lighting in the area in question was not adequate or was not adequate in light of the fact that the hose was black, [Podemski] has not designated evidence that he failed to see the hose. The factual question of the degree of illumination at the location where the trip occurred is not material under these circumstances.

*Id.* at 19-20. On April 29, 2016, Podemski filed a motion to correct error. At a hearing on the motion on July 29, 2016, Podemski's counsel was asked by the court if the "conversation . . . about how the parties worked cooperatively through the course of [these proceedings], that addresses my previous decision to not allow the supplemental designation. That's your response to my ruling, basically," and Podemski's counsel responded that "we don't feel it's necessary to address that, that particular ruling in connection – that's not the basis for our motion." Transcript at 70. The court entered an order affirming its grant of summary judgment on August 5, 2016, stating:

At the July 29, 2016 hearing, [Podemski] asserted that the Court's decision to deny [Podemski's] Motion to File

Supplemental Designation was not a basis upon which [Podemski's] Motion to Correct Error [was] made.

Nonetheless, the Court affirms its conclusions about the timing and nature of the deposition testimony sought by [Podemski] to "supplement" his designation. Additionally, the Court questions whether the deposition testimony of Mitchell Edward Mullins constitutes "supplementation" as contemplated by T.R. 56. See *Fort Wayne Lodge, LLC vs. EBH Corporation and Edward A. White*, 805 N.E.2d 876 (Ind. Ct. App. 2004)[.]

Publication of Depositions

[Podemski's] Motion also expresses concern . . . about the Court's "failure to properly admit and consider depositions tendered to the Court as part of plaintiff's summary judgment response." . . . Again, as noted at the July 29, 2016 hearing, all depositions, save the deposition of Mitchell Edward Mullins, are published and available for use as appropriate. . . .

The Court, in its review of [Podemski's] brief took the referenced portions of the deposition as true, but determined that while suggesting the existence of a dangerous condition, they did not suggest the existence of an unreasonable danger or a basis for finding that Plaintiff would not fail to protect himself against any such danger, under all of the facts designated to the Court.

Second Corrected Appellant's Appendix Volume 2 at 21-23. It also stated that Podemski's "designated evidence does not create any issue of fact as to whether the condition of [Praxair's] premises were unreasonably dangerous," that even assuming "that the lighting was inadequate," Podemski "proceeded into the dark, without using his flashlight, without attending to his surroundings," and

that Podemski "has not established a genuine issue of fact as to whether Defendants were in a better position than was [Podemski] to be aware of the condition of the air hose." *Id.* at 8.

### *Discussion*

[11] The issue is whether the trial court erred in entering summary judgment in favor of Praxair and Antibus or abused its discretion in denying Podemski's motion to correct error. We generally review rulings on motions to correct error for an abuse of discretion. *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. *Lighty v. Lighty*, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), *reh'g denied*.

[12] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* In the

summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

[13] Podemski contends the court erred when it excluded the deposition testimony of Mullins and when it granted summary judgment. He argues questions of fact exist as to whether the configuration of the air hose was unreasonably dangerous and whether the danger posed by the configuration of the black hose and inadequate lighting was open and obvious.

[14] Praxair contends that the court did not abuse its discretion by "denying Podemski's eleventh-hour attempt to supplement his designation with the deposition" of Mullins, correctly concluded that Praxair had no duty to protect Podemski, and did not abuse its discretion by denying Podemski's amended motion to correct errors. Brief of Appellee Praxair at 18.

[15] Antibus contends that the court correctly denied Podemski's attempt to supplement his response with the deposition of Mullins, correctly determined that Podemski failed to show there was a duty owed or assumed by Antibus, and did not err in denying Podemski's amended motion to correct errors.

[16] First, we address the preliminary procedural issue involving Podemski's motion to supplement his designation of evidence with Mullins's deposition. Given the length of time between Podemski's identification of Mullins as a potential witness in his October 10, 2013, and August 7, 2014 responses to the

Interrogatories sent by Praxair and Antibus, respectively, and the March 28, 2016 motion to supplement the record with Mullins's deposition, and in light of the multiple extensions granted to Podemski, we cannot say the trial court abused its discretion in denying Podemski's motion. *See Scripture v. Roberts*, 51 N.E.3d 248, 254 (Ind. Ct. App. 2016) (holding no abuse occurred in a denial of the defendants' attempt to file supplemental affidavits the day before the hearing on the motion for summary judgment and eighty-one days after the plaintiff's reply to the defendants' response to the summary judgment motion).

[17]   We now turn to Podemski's claims of negligence. To recover on a negligence theory, the plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). Absent a duty there can be no negligence or liability based upon the breach. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Whether a duty exists is a question of law for the courts to decide. *Id.* at 386-387. A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008), *trans. denied*. Generally, summary judgment is rarely appropriate in negligence cases because they are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). However, where the facts are undisputed and

lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003).

[18] Generally, an owner of property is under no duty to provide an independent contractor with a safe place to work. *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005) (citing *Zawacki v. U.S.X.*, 750 N.E.2d 410, 414 (Ind. Ct. App. 2001), *trans. denied*). However, a property owner must maintain its property in a reasonably safe condition for business invitees, including employees of independent contractors. *Id.* (citing *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind. 1990)). Indiana has adopted the formulation of landowners' liability to business invitees expressed in the Restatement (Second) of Torts. *Id.* (citing *Douglass*, 549 N.E.2d at 370); *see also Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003). The Restatement provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. Under this section, an invitee is "entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002) (citing Restatement (Second) of Torts § 343, cmt. d), *trans. denied.*

[19] In addition, Restatement (Second) of Torts § 343A(1), which addresses known and obvious dangers and is meant to be read in conjunction with § 343, provides: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." The word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves, and thus the condition or activity must not only be known to exist, it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. Restatement (Second) of Torts § 343A, cmt. b. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable person, in the position of the visitor, exercising ordinary perception, intelligence, and judgment. *Id.*

[20] The designated evidence establishes that the condition presented by the air hose and the illumination of the area around the hose was known and obvious. At the time of his fall, Podemski had been a truck driver for many years and had

been at the Praxair facility roughly every day during these years prior to the time of his accident. Podemski knew that the Praxair facility had not had lighting in the area of the hose for over five years, and he carried a flashlight in the truck which he used to "look around" at other times. Praxair Appendix Volume 2 at 28. Additionally, we cannot say that Defendants should have expected that Podemski would not discover or fail to protect himself against the condition presented by the configuration of the air hose. *See* Restatement (Second) of Torts § 343 ("A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he [ . . . ] should expect that they will not discover or realize the danger, or will fail to protect themselves against it . . . ."); *Merrill*, 771 N.E.2d at 1265-1267 ("Merrill knew of the skylights on the roof and their attendant dangers and had already avoided at least one skylight while walking on the roof. Despite his knowledge and appreciation of the risks, Merrill proceeded down the roof, was distracted, and fell into a skylight. Knauf could not have anticipated such events given the circumstances surrounding the invitation and the comparable knowledge of the parties.").

## *Conclusion*

For the foregoing reasons, we affirm the entry of summary judgment in favor of Praxair and Antibus and against Podemski.

Affirmed.

May, J., and Pyle, J., concur.