# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 05 2019, 7:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Corey Hamersley
Sheridan, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CORRECTION

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
AMERICAN BROADCASTING
COMPANY, INC.

Steven M. Badger
Kara M. Kapke
Barnes & Thornburg LLP
Indianapolis, Indiana

Nathan Siegel
Alison Schary
Davis Wright Tremaine LLP
Washington, District of Columbia

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Hamersley, | February 5, 2019 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 18A-PL-955 |
| v. | Appeal from the Madison Circuit Court |
| Indiana Department of Correction, and American Broadcasting Company, Inc., | The Honorable Mark Dudley, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 48C06-1704-PL-33 |

**Shepard, Senior Judge.**

Corey Hamersley appeals the dismissal of his lawsuit against the Indiana Department of Correction (DOC) and the American Broadcasting Company, Inc. (ABC). Concluding that the trial court correctly dismissed, we affirm.

## Facts and Procedural History

While incarcerated on unrelated charges, Hamersley was interviewed by former FBI agent Brad Garrett and investigator Bill Benjamin regarding the June 3, 2011 disappearance of Indiana University student Lauren Spierer. The interview was recorded, and a portion of it was included in a report called "Looking for Lauren," which ABC aired on its newsmagazine program "20/20." Hamersley says in his brief that "[t]he entire prison interview and recording lasts between 35-40 minutes which was mostly unaired." Appellant's

Br. p. 6 n.3. In the report, Hamersley's photo was shown with the three men who were last seen with Lauren on the night she disappeared. The report explained that the Spierer family received a tip from a former inmate of Hamersley who reported that Hamersley had told him he knew the men involved in Lauren's disappearance. The report included footage from an interview with the former inmate recounting a conversation in which Hamersley told him Lauren and the men were drinking and taking the drug ecstasy, and Lauren overdosed. The men were scared and disposed of her body.

[3] The footage from Hamersley's interview that was included in the report consisted of Garrett asking Hamersley if he helped move Lauren's body. Hamersley responded, "'Absolutely not. I've never met this person before in my life.'" *Id.* at 6; Appellee ABC's Br. p. 11. When Garrett asked if he would contact Garrett if he remembered or heard anything about the case, Hamersley responded, "'Honestly, probably not. I do not want to be associated with this at all.'" *Id.* During a discussion between Garrett and an ABC news journalist at the end of the report, Garrett stated his belief that Hamersley was lying to him and that he would continue investigating to find out why.

[4] Hamersley subsequently filed a complaint against DOC and ABC. He alleged that DOC negligently allowed Garrett and Benjamin to enter the correctional facility, meet with him, and videotape their conversation. As to ABC, Hamersley claimed that its report slandered and defamed him. Both DOC and ABC filed motions to dismiss, which the trial court granted.

# Issues

Hamersley presents two issues for our review, which we restate as:

> I. Whether the trial court erred in dismissing his lawsuit against DOC.

> II. Whether the trial court erred in dismissing his lawsuit against ABC.

# Discussion and Decision

## I. Department of Correction

The trial court dismissed Hamersley's action against DOC for failure to state a claim upon which relief can be granted. Hamersley appeals the dismissal, contending DOC was negligent for allowing him to be interviewed because he was not made aware that Garrett and Benjamin were ABC investigators. Rather, he believed they were with law enforcement and, had he known they were with the media, he would not have spoken to them. He suggests that DOC's failure to obtain from him a waiver permitting the release of the interview resulted in his giving an involuntary interview to his detriment.

An appellate court engages in a de novo review of the trial court's grant or denial of a motion based on Trial Rule 12(B)(6). *Brown v. Vanderburgh Cty. Sheriff's Dep't*, 85 N.E.3d 866 (Ind. Ct. App. 2017). A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a claim, not the supporting facts. *Id.* Accordingly, we must determine if the trial court erred in its application of the law, and we consider the complaint in the light most favorable to the non-

moving party and draw every reasonable inference in favor of that party. *Chenore v. Plantz*, 56 N.E.3d 123 (Ind. Ct. App. 2016). The grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Brown*, 85 N.E.3d 866.

[8] To prevail on a claim of negligence, a plaintiff must show: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15 (Ind. Ct. App. 2015). Absent a duty, there can be no negligence or liability based upon a breach. *Powell v. Stuber*, 89 N.E.3d 430 (Ind. Ct. App. 2017), *trans. denied*. Whether a duty exists is a question of law for the courts to decide. *Podemski v. Praxair, Inc.*, 87 N.E.3d 540 (Ind. Ct. App. 2017), *trans. denied*.

[9] DOC is neither a guarantor of prisoners' safety, nor has it been relieved of all responsibility for their safekeeping. *Cole v. Ind. Dep't of Corr.*, 616 N.E.2d 44 (Ind. Ct. App. 1993), *trans. denied*. Rather, its responsibility toward its charges lies somewhere in between: DOC has the duty "to take reasonable precautions to preserve the life, health, and safety of prisoners." *Id.* at 45-46.

[10] At the heart of Hamersley's argument is DOC Policy and Procedure number 00-03-101, which sets forth, in pertinent part:

> The offender must sign a waiver permitting release of his/her image and/or words (ATTACHMENT I) or the request [for an interview] shall be denied. The interview may take place in

person or by telephone, in accordance with this Administrative Procedure, and at the convenience of the facility. The written release or decision not to be interviewed shall be retained on file in the offender's facility packet.

Appellant's App. Vol. 2, p. 44.

[11]     We first observe that internal procedures and policies are expected in the prison context, particularly those concerning deterrence of crime, rehabilitation of prisoners, and institutional safety. *See Kimrey v. Donahue*, 861 N.E.2d 379 (Ind. Ct. App. 2007), *trans. denied*. As a result, there exists a long-standing principle in this state that the judiciary is constrained from interfering with the internal procedures and policies of DOC. *Id.* The rationale for this hands-off approach has been explained as follows:

> Courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. The operation of a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. The complex and intractable problems in prisons are not readily susceptible of resolution by judicial decree. Thus, courts will afford substantial deference to the professional expertise of correction officials with respect to the day-to-day operation of prisons and the adoption and execution of prison policies.

*Cohn v. Strawhorn*, 721 N.E.2d 342, 346 (Ind. Ct. App. 1999) (internal citations omitted), *trans. denied*. A DOC internal policy/procedure does not necessarily or even generally create a legal duty on the part of DOC. We have been

presented with no evidence that DOC instituted this policy with the intent of creating an additional duty or expanding its current duty, and we will not interfere with the internal workings of DOC by doing so on its behalf.

[12] Moreover, under these circumstances we find no responsibility on the part of DOC under its recognized broader duty to preserve Hamersley's life, health, and safety. There is no indication that his decision to speak with Garrett and Benjamin had any bearing on the preservation of his life, health, or safety or that it was coerced or involuntary in any way. Rather, Hamersley seeks to expand the duty of DOC to include protection of the reputations of Indiana's inmates. He has not provided any support for such an expansion of DOC's duty however, and we decline to create it. Absent a duty, there can be no negligence, *Powell*, 89 N.E.3d 430; therefore, the trial court's dismissal of Hamersley's negligence claim was proper.

## II. American Broadcasting Company

[13] The trial court also dismissed Hamersley's action against ABC, citing Hamersley's failure to comply with Indiana Code section 34-15-3-2 (1998). Hamersley asserts that he did in fact comply with the statute.

[14] We begin with Indiana Code section 34-15-3-1 (1998), which states, in pertinent part:

> (a) This chapter applies to a suit brought for:
>
> (1) publishing;

(2) speaking;

(3) uttering; or

(4) conveying by words, acts, or in any other manner;

a libel or slander by any radio or television station or company in Indiana.

Section 2 of the statute provides:

At least three (3) days before filing a complaint in a suit described in section 1 of this chapter, the aggrieved party *shall* serve notice:

(1) in writing;

(2) on the manager of the radio or television station;

(3) at the principal office of the radio or television station; and

(4) that specifies the words or acts that the aggrieved party alleges to be false and defamatory.

Ind. Code § 34-15-3-2 (emphasis added).

[15] In his response to ABC's motion to dismiss, Hamersley submitted a document he refers to as his pre-suit notice pursuant to Indiana Code §34-15-3-2. While the document contains both date and signature lines, it is undated and unsigned. In addition, although it states he has a claim against "ABC news

network," it does not show that it was sent to the manager of ABC at its principal office. Appellee ABC's App. Vol. II, p. 71. Further, it states that Garrett and Benjamin interviewed him and made "false accusations that [he] helped move the missing women's [sic] body and insinuated far worse." *Id.* at 71-72. Hamersley states that after he denied any involvement in Lauren's disappearance, Garrett stated his opinion that Hamersley is lying and said he would "continue to investigate [Hamersley] to find out why he lied." *Id.* at 72. Hamersley also alleged that "[t]hroughout the episode, [his] photo is shown alongside the photos of the last three men seen with the missing women [sic]." *Id.*

[16] In its order dismissing Hamersley's action against ABC, the trial court found his notice deficient because the document was "unsigned, undated, with no cover letter or any other indication that Hamersley made a written notice upon ABC at its principal office that it retract specific words or acts that he felt to be false and defamatory." Appellant's App. Vol. 2, p. 32. In his motion to correct error, Hamersley asserts he signed, dated and mailed a copy of his notice to ABC and then subsequently printed an additional copy from his computer for use as an exhibit. In the end, all we have are Hamersley's self-serving claims; there is no proof of compliance with the statute.[1]

---

[1] Hamersley also included in his appendix a copy of a certified mail return receipt that is undated and lacks any information linking it to any particular document. ABC asserts this document was not presented to the trial court. Our review of the record does not reveal that it was presented to the trial court, and it may not be submitted for the first time on appeal. *See Morey v. Morey*, 49 N.E.3d 1065, 1073 n.3 (Ind. Ct. App. 2016).

[17] Although the only basis stated in the trial court's order of dismissal is Hamersley's failure to comply with Indiana Code section 34-15-3-2, we can affirm a trial court's dismissal on any theory or basis evident in the record. *See Blackman v. Gholson*, 46 N.E.3d 975 (Ind. Ct. App. 2015). Therefore, we discuss additional grounds supporting the trial court's dismissal of Hamersley's action against ABC.

[18] The trial court also could have properly dismissed Hamersley's complaint under the authority of Indiana Code section 34-58-1-2 (2004). That statute provides, in pertinent part:

> (a) A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim:
>
> > (1) is frivolous;
> >
> > (2) is not a claim upon which relief may be granted; or
> >
> > (3) seeks monetary relief from a defendant who is immune from liability for such relief.
>
> (b) A claim is frivolous under subsection (a)(1) if the claim:
>
> > (1) is made primarily to harass a person; or
> >
> > (2) lacks an arguable basis either in:
> >
> > > (A) law; or

(B) fact.

*Id.* This statute is one of several enacted by the General Assembly in 2004 in response to prolific offender litigation. *Smith v. Wal-Mart Stores E., LP*, 853 N.E.2d 478 (Ind. Ct. App. 2006), *trans. denied*. These statutes were "designed to balance an offender's right to file a civil action with the heavy burden that those suits have placed on our judicial system." *Id.* at 481.

[19] The standard of review for dismissals under Indiana Code section 34-58-1-2 is de novo. *Smith v. Huckins*, 850 N.E.2d 480 (Ind. Ct. App. 2006). We look only to the well-pleaded facts contained in the complaint and determine whether it contains allegations concerning all of the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

[20] In his complaint, Hamersley has alleged a claim of defamation against ABC, a television station. However, the complaint does not refer in any way to Indiana Code section 34-15-3-2, or acknowledge its requirements, or state Hamersley's compliance therewith. Thus, a second basis for the trial court's dismissal is Indiana Code 34-58-1-2 (a)(2)—that is, Hamersley's defamation claim is not a claim upon which relief may be granted due to his failure to comply with the mandatory dictates of Indiana Code section 34-15-3-2.

[21] Moreover, to establish defamation, a plaintiff must prove: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944 (Ind. Ct. App. 2014), *trans. denied*. A private individual who brings a defamation action involving an event

of public interest or concern must prove actual malice. *Kitco, Inc. v. Corp. for Gen. Trade*, 706 N.E.2d 581 (Ind. Ct. App. 1999). Whether a matter is of public concern or interest is a question of law for the court. *Brewington v. State*, 7 N.E.3d 946 (Ind. 2014).

[22] In this instance, the disappearance of Lauren certainly constitutes a matter of widespread public interest and concern. Her disappearance and the ensuing investigation have received extensive media coverage spanning several years and are legitimate concerns for this state generally and for the city of Bloomington and Indiana University in particular. Accordingly, Hamersley must establish that ABC acted with actual malice.

[23] Actual malice requires a defamatory falsehood to be published with knowledge of or reckless disregard of its falsity. *Kitco*, 706 N.E.2d 581. Publication is made with reckless disregard of the truth when the publisher has a high degree of awareness of its probable falsity. *Id.* Thus, the test is not whether a reasonably prudent person would have published the statement but rather whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts about the truth of the publication. *Id.*

[24] In this case, the complaint makes no allegation of actual malice on the part of ABC. Even on appeal, the parties characterize the aired report as a presentation of the evidence and information gathered thus far and the opinions and theories of investigators as to possible scenarios concerning the unsolved disappearance of a college co-ed. In addition, ABC's inclusion in the report of

Hamersley's denial of involvement tends toward demonstrating a lack of actual malice. This hardly qualifies as evidence that ABC knew or had a high degree of awareness of the report's falsity. Thus, a review of Hamersley's complaint through the lens of Section 34-58-1-2 reveals a lack of allegations concerning material elements necessary to sustain a recovery in an action for defamation. *See Smith*, 850 N.E.2d 480. Accordingly, a dismissal under the authority of Indiana Code 34-58-1-2(a)(2) would also have been appropriate.

## Conclusion

Considering the complaint in the light most favorable to Hamersley, we cannot say the trial court erred in its application of the law. Accordingly, we affirm the trial court's dismissal of his complaint against both DOC and ABC.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.