## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2020, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. LaSalvia
South Bend, Indiana

ATTORNEY FOR APPELLEE

J. Thomas Vetne
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gail Westbrook,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>HN Food Plus, Inc.,<br>*Appellee-Defendant.* | July 2, 2020<br><br>Court of Appeals Case No.<br>19A-CT-2407<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable David C.<br>Chapleau, Judge<br><br>Trial Court Cause No.<br>71D06-1705-CT-225 |

**Shepard, Senior Judge.**

[1]     Gail Westbrook appeals the trial court's finding that HN Food Plus could not have foreseen a random attack upon her by a third party and thus did not have a duty to protect her from such attack.  We affirm the trial court.

# Facts and Procedural History

[2] The facts most favorable to Westbrook, the non-movant, follow. In June 2016, HN Food Plus was doing business in South Bend as a Citgo gas station/convenience store. Westbrook was riding in a friend's car when they pulled into the Citgo lot, behind another car that was blocking further entrance. Westbrook got out of the car and asked the other driver to move his car forward. The man told Westbrook she could wait her turn and called her a "bitch." Appellant's App. Vol. 2, p. 24 (Westbrook Depo. p. 50).

[3] Westbrook continued walking to the store entrance. As she was opening the door, the man came up behind her, grabbed her purse, and punched her several times in the face with a closed fist. Westbrook's glasses were broken and she was knocked to the ground. Westbrook got up and ran toward her friend's car, but she reached the attacker's car first and attempted to get in. Before she could do so, the man caught up to her and punched her several more times. He then left in his car, with Westbrook and her friend in pursuit. They were unable to get the man's license plate number. Westbrook went back to Citgo and asked the cashier to call the police.

[4] Citgo had a surveillance system that captured the attack. The parties agree the video reflects that three minutes and thirteen seconds elapsed between Westbrook's arrival at the store and the time her attacker fled. Just 64 seconds passed between the first set of punches at the door of the store and the time the man fled.

[5]     Based on these events, Westbrook sued HN Food Plus alleging negligence in failing "to provide adequate security or to provide for [her] safety." *Id.* at 11 (Complaint ¶ 4). HN Food Plus moved for summary judgment, which Judge Chapleau granted after a hearing.

## Issue

[6]     The sole issue we decide is whether the trial court erred by entering judgment in favor of HN Food Plus on Westbrook's negligence claim.

## Discussion and Decision

[7]     When reviewing the entry of summary judgment, our standard of review is similar to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *City of Indianapolis v. Cox*, 20 N.E.3d 201 (Ind. Ct. App. 2014), *trans. denied* (2015). Appellate review of a summary judgment motion is limited to those materials specifically designated to the trial court. *Sheehan Const. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685 (Ind. 2010). All facts and reasonable inferences drawn from those facts are construed in favor of the non-movant. *Id.* Further, the trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that granting summary judgment was erroneous. *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886 (Ind. Ct. App. 2012), *trans. denied*.

[8]     Westbrook's negligence claim against HN Food Plus is grounded in premises liability. To prevail on such a claim, a plaintiff must show: (1) a duty owed by

the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15 (Ind. Ct. App. 2015). Absent a duty, there can be no negligence or liability based upon a breach. *Powell v. Stuber*, 89 N.E.3d 430 (Ind. Ct. App. 2017), *trans. denied* (2018). Under Indiana premises liability law, it is well established that a landowner's duty to an invitee is one of reasonable care for the invitee's protection while the invitee is on the premises. *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016). Whether a duty exists is a question of law for the courts to decide. *Podemski v. Praxair, Inc.*, 87 N.E.3d 540 (Ind. Ct. App. 2017), *trans. denied* (2018).

[9] Recent decisions by our Supreme Court in *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016) and *Rogers*, 63 N.E.3d 316 drive our decision in this case.

[10] In *Goodwin*, a patron at a bar became angry when he overheard comments he believed to be about his wife. He produced a handgun and shot three people. Those three individuals sued the bar for negligence based on premises liability. On transfer, the Supreme Court affirmed summary judgment and the determination that the bar did not owe the patrons a duty to protect them. The Court recognized foreseeability as a component of the duty element of negligence and concluded that the assessment of foreseeability in this context is a determination to be made by the court utilizing an analysis of the "'broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.'" *Id.* at 390. The Court reasoned that although bars can be host to

rowdy behavior, bar owners would not routinely contemplate that one patron might suddenly shoot another. *Id.* at 393-94. Therefore, the Court declined to recognize a duty and held that a shooting inside a neighborhood bar is not foreseeable as a matter of law. *Id.* at 394.

[11] On the same day it decided *Goodwin*, the Court decided *Rogers*. In that case, a homeowner and her boyfriend co-hosted a party. At the end of the night, the boyfriend engaged in a fistfight with two guests. Afterward, the homeowner found one of the guests lying motionless on her basement floor. He died a short time later. His estate sued the homeowner for negligence. On transfer, the Court applied the *Goodwin* foreseeability analysis and determined that the homeowner did not have a duty to protect the guest from being injured by a co-host of the party in an unforeseeable fistfight. The Court explained, "Although house parties can often set the stage for raucous behavior, we do not believe that hosts of parties routinely physically fight guests whom they have invited. Ultimately, it is not reasonably foreseeable for a homeowner to expect this general harm to befall a house-party guest." *Id.* at 326.

[12] The Court then addressed a second issue in *Rogers*: whether the homeowner had a duty to render aid to the guest when she found him lying unconscious on her basement floor and could thus be liable for negligence in responding to the incident. This question the Court answered in the affirmative. The Court reasoned that "[h]omeowners should reasonably expect that a house-party guest who is injured on the premises could suffer from an exacerbation of those

injuries" and for that reason, the homeowner owed the guest a duty to protect him from the exacerbation of an injury that occurred in her home. *Id.* at 327.

[13] Bearing this framework in mind, we turn to the case at hand. Westbrook hangs her hat on the *second* duty discussed in *Rogers*—she argues that HN Food Plus "had a duty to intervene to prevent an exacerbation of [her] injury during the second assault." Appellant's Br. p. 8. For its part, HN Food Plus maintains it owed no duty to protect Westbrook from a sudden assault in its parking lot.

[14] We first note, as we have many times, that a landowner has a duty to take reasonable precautions to protect invitees from foreseeable criminal attacks. *Rogers*, 63 N.E.3d 316. Whether this duty applies to HN Food Plus, as a matter of law, requires us to evaluate the broad type of plaintiff and harm involved, without considering the specific facts of the case. Thus, applying the *Goodwin* foreseeability analysis, we find the broad type of plaintiff is a gas station/convenience store patron, and the broad type of harm is a random attack by a third party. Although random attacks have become more prevalent in our society, they are not the norm. Therefore, it is not reasonably foreseeable for a business owner to expect this type of harm to occur to one of its customers. To find otherwise would be "to impose a blanket duty on proprietors to afford protection to their patrons" thus requiring proprietors to be "insurers of their patrons' safety," contrary to the public policy of this state. *Goodwin*, 62 N.E.3d at 394; *see also Cavanaugh's Sports Bar & Eatery, Ltd. v. Porterfield*, 140 N.E.3d 837 (Ind. 2020) (determining that bar owed no duty to protect patron from sudden parking lot brawl when no evidence showed that

bar knew fight was impending and reiterating objection to imposing comprehensive duty on proprietors to afford protection to their patrons from unpredictable criminal attacks). Accordingly, HN Food Plus had no duty to protect Westbrook from attack by an unknown third party.

[15] We turn next to whether HN Food Plus owed a duty to Westbrook to protect her from an exacerbation of her injuries. Westbrook claims the HN Food Plus clerk saw the first attack and therefore had a duty to call the police or somehow intervene to protect her from the second assault where her injuries were exacerbated. Westbrook's evidence in this regard is her deposition testimony that, when she approached the door just before the first assault, she looked at the clerk inside the store, and the clerk "looked at me just a little bit." Appellant's App. Vol. 2, p. 26 (Westbrook Depo. p. 59).

[16] The duty in *Rogers* rested on the homeowner's knowledge of an injury caused by the fight, and that knowledge generated her duty to protect against exacerbation of the injury. Here, there is no indication that the clerk, who was helping customers inside the store, actually saw the first attack which occurred outside the store, much less had knowledge that Westbrook was injured. Moreover, it is not reasonable that HN Food Plus would foresee that a second attack would occur seconds later further out in its parking lot, with the whole episode—from first punch to attacker fleeing—lasting 64 seconds. Thus, with no knowledge of Westbrook's injuries, HN Food Plus had no duty to take action to prevent exacerbation of those injuries. *See Rose v. Martin's Super Markets LLC*, 120 N.E.3d 234 (Ind. Ct. App. 2019) (affirming summary judgment for grocery

store and holding store had no duty to take action to prevent exacerbation of customer's injuries where store had knowledge of active shooter but had no knowledge of customer's injuries inflicted by shooter until it was too late to offer her assistance), *trans. denied*.

## Conclusion

The trial court did not err in granting summary judgment to HN Food Plus.

Affirmed.

Najam, J., and Kirsch, J., concur.